AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of Indiana

| | |
|---|---|
| United States of America<br>v.<br>RICHARD KLAFF<br><br>*Defendant(s)* | Case No. 1:21MJ-3 |

-FILED-
JAN 14 2021
At _____ M
ROBERT N. TRGOVICH, CLERK
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __2/21/20 & 3/11/20__ in the county of __Allen__ in the __Northern__ District of __Indiana__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | knowingly and intentionally distributed a controlled substance, namely 5 grams or more of methamphetamine. |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
*Complainant's signature*

FBI SA Nathan Foster
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __01/14/2021__

_____
*Judge's signature*

s/Paul R. Cherry

City and state: __Fort Wayne, Indiana__

Paul R. Cherry, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

Comes now, Special Agent Nathan Foster of the Federal Bureau of Investigation (FBI), first being duly sworn, now deposes and says:

I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I am an FBI Special Agent currently assigned to the Counter Intelligence Squad of the FBI Fort Wayne Resident Agency, Indianapolis Division. I have been employed as an FBI Special Agent since January, 2017. I was previously assigned to the FBI McAllen Resident Agency, San Antonio Division, where I investigated Transnational Organized Criminal Organizations, Street Gangs, and Terrorism Subjects. Due to the proximity that McAllen, Texas has with the United States and Mexico border, my investigations heavily focused on the importation, trafficking, and conspiracy to possess large quantities of narcotics. Specifically, those investigations targeted Mexican Cartels and other organizations with association to Mexican Cartels. My investigations involved the use of informants, audio/video technical surveillance, controlled narcotics purchases,

1

controlled narcotics deliveries, and large-scale bulk cash operations. My investigative activities have directly led to the seizure of large amounts of cocaine, heroin, methamphetamine, and fentanyl.

On or about February 18, 2020, Fort Wayne Police Department (FWPD) Detective John Greenlee (Detective Greenlee) met with a Confidential Human Source (CHS1) to conduct a controlled drug purchase from Richard KLAFF (KLAFF). Prior to the transaction, Detective Greenlee conducted pre-buy searches of CHS1's person and vehicle, finding no contraband, and provided CHS1 with pre-recorded buy money. Under FWPD surveillance, CHS1 arrived at a particular business in Fort Wayne, Indiana, which is located in the Northern District of Indiana. After entering through the front doors of the business, CHS1 met with KLAFF inside the rear of the business and provided him with $230 of pre-recorded U.S. currency in exchange for approximately 3.4 grams of methamphetamine ("meth") from KLAFF. In the back, KLAFF was seated at a desk watching a monitor with various views of surveillance cameras outside. During the narcotics transaction, CHS1 stated that KLAFF displayed a box that contained a large amount of meth that was individually wrapped for sale, with CHS1 observing approximately 50 individual bags. Under FWPD surveillance, CHS1 departed the business after the transaction in order to

meet with handling officers at a predetermined location. CHS1 provided the purchased item to officers, and the substance was a white crystal substance that later field tested positive for the presence of meth. Detective Greenlee performed post-buy searches of CHS1's person and vehicle, finding no contraband. This transaction was audio recorded. CHS1 identified KLAFF as the individual providing the meth from a series of photographs. During the debriefing, CHS1 provided details about the transaction, and based upon the independent corroboration of CHS1 by officers during the controlled buy, your Affiant believes CHS1 to be credible.

On or about February 21, 2020, Detective Greenlee met with CHS1 to conduct another controlled meth purchase from KLAFF. Prior to the deal, Detective Greenlee performed a pre-buy search of CHS1 and his/her vehicle, with no contraband found. Under FWPD surveillance, CHS1 arrived at the same business location in Fort Wayne. After entering the building, CHS1 met with KLAFF and provided him $650 of pre-recorded U.S. currency in exchange for approximately 28 grams of meth from KLAFF. CHS1 inquired about purchasing a firearm, and KLAFF told CHS1 that a new handgun would be about $600 or $700. KLAFF said that he had just sold a gun on the day before with an infrared scope and an extended magazine. During their conversation,

KLAFF displayed a possible .380 handgun to CHS1. CHS1 offered to buy this gun, but KLAFF liked it too much. KLAFF said that he could get CHS1 a Taurus 9mm pistol, and CHS1 provided money to KLAFF for the future firearms purchase. Under FWPD surveillance, CHS1 later departed the business to meet with handling officers at a predetermined location. CHS1 provided officers with the meth purchased from KLAFF, and the substance was a white crystalline substance that later field tested positive for the presence of meth. The post-buy searches of CHS1's person and vehicle were negative for contraband. This transaction was audio recorded.

On or about March 11, 2020, Detective Greenlee met with CHS1 to conduct another controlled meth purchase from KLAFF. Detective Greenlee conducted pre-buy searches of CHS1's person and vehicle, with no contraband found. Under FWPD surveillance, CHS1 arrived at the same business location in Fort Wayne. CHS1 met with KLAFF inside the building and provided him $650 of prerecorded U.S. currency, and in exchange, KLAFF provided CHS1 with approximately 31.5 grams of meth. CHS1 and KLAFF discussed the Taurus handgun, and KLAFF said that he did not have it today and would have it in a few days for CHS1. Under FWPD surveillance, CHS1 later departed to meet with handling officers at a predetermined location. CHS1

4

handed over the purchased item, and the substance was a white crystalline substance that later field tested positive for the presence of meth. Detective Greenlee conducted post-buy searches of CHS1's person and vehicle, with no contraband found. This transaction was audio recorded.

The three previously mentioned controlled narcotics purchases from KLAFF produced approximately 62.9 grams of crystal meth. Through my training, experience, and speaking with both agents and narcotics officers with FWPD, meth seizures in the Fort Wayne area overwhelmingly test for a purity of 95% to 99% at the DEA laboratory. Based upon this typical purity, your Affiant expects that there will be more than 5 grams of actual meth with the second and third controlled buys.

Your Affiant has not included each and every fact known or provided by members of the FBI or FWPD or by other law enforcement officers concerning the individual events described in this affidavit, and your Affiant has not provided all the information concerning the investigation. The information contained in the affidavit is based on your Affiant's personal observations and on information provided to your Affiant by other law enforcement officers.

Based upon the foregoing, your Affiant has probable cause to believe that on or about February 21 and March 11, 2020, KLAFF knowingly and

intentionally distributed a controlled substance, namely 5 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1).

The foregoing facts are true to the best of your Affiant's knowledge and belief, and further your Affiant sayeth naught.

_____
Nathan Foster
Special Agent, FBI

Subscribed and sworn before me this 14th day of January, 2021.

_s/Paul R. Cherry_____
Honorable Paul R. Cherry
U.S. Magistrate Judge

6